**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARC ROTENBERG,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | **Case No. 1:21-cv-00903-TSC** |
| ) | |
| **POLITICO LLC, and** ) | **Hon. Judge Tanya S. Chutkan** |
| **PROTOCOL MEDIA, LLC,** ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS AND REPLY IN SUPPORT OF CROSS MOTION**
**FOR LEAVE TO TAKE JURISDISCTIONAL DISCOVERY**

**INTRODUCTION**

Plaintiff Marc Rotenberg respectfully asks the Court to deny Defendants' Motion to Dismiss and to grant Plaintiffs' Cross-Motion for Limited Jurisdictional Discovery. In the Reply, Defendants did not even attempt to rebut the arguments in Plaintiff's Opposition. As Defendants have previously admitted that the sole member of both Protocol and Politico is Allbritton LLC, a limited liability company organized under the laws of Delaware with its principal place of business in Arlington, Virginia, the points in Plaintiff's Opposition to the Motion to Dismiss should be deemed conceded and federal diversity jurisdiction established.

Regarding jurisdictional discovery, Plaintiff set out three specific reasons to grant jurisdictional discovery, highlighting the date of formation of Allbritton LLC and the notable change in the composition of the company during the pendency of the litigation (the only changes were the additions of the leadership of Defendant Protocol. Not only have the Defendants failed

to rebut the factual points that support Plaintiff's good faith belief that it will supplement jurisdictional allegations through discovery, but Defendants also specifically failed to acknowledge the significance of the April 7, 2020 date in the case before the Court. For these reasons, those set out below, and in the original Cross Motion, the Court should grant jurisdictional discovery.

Finally, Defendants have cited to *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106 (D.C. Cir. 2017) as a controlling authority in this case. *Kahl* is highly favorable to Plaintiff and provides further reason to deny the Motion to Dismiss and to grant the Cross Motion for limited jurisdictional discovery.

## ARGUMENT

### I.      The Court Should Deny the Motion to Dismiss

By way of a sur-reply, Plaintiff states that the Defendants did not address Plaintiff's arguments in its Opposition to the Motion to Dismiss and that Plaintiff's points should therefore be considered as conceded. *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded."). *See also Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) (when a party fails to respond to an argument raised in a motion, "it is proper to treat that argument as conceded").

In the Opposition to the Motion to Dismiss, Plaintiff pointed out that in every case cited by the Defendant the matter of jurisdiction was determined by looking at the membership of the named party. (*See, e.g.,* Dkt. 13 at 5 ("To resolve the citizenship of the LLC in *Cost Command*, it was necessary to consider only the membership of the named party."); *Id.* at 6 ("Again, it was necessary in *Carden* for the Supreme Court to consider only the membership of the named party.");

*Id.* at 7 (In *Shulman v. Voyou,* LLC, 305 F. Supp. 2d. 36 (D.D.C. 2004) "[d]iversity was determined simply by examining the members of the named defendant LLC . . . ."). Plaintiff then pointed out that "[i]n the matter before this Court, Allbritton LLC, incorporated in Delaware, is the sole member of the named Defendants Politico and Protocol." (*Id.* at 11.)

At no point in the Reply does the Defendant address this argument or attempt to rebut it.

In the Opposition to the Motion to Dismiss, Plaintiff also cited Judge Nichols' recent opinion about diversity jurisdiction analysis for LLCs in which he stated, "As this case demonstrates there may be good reasons to modify how unincorporated associations are treated for diversity purposes." *C.F. Folks, Ltd. v. MCP II Jefferson, LLC,* 2019 U.S. Dist. LEXIS 206872 at 8 (D.D.C. 2019*)* (citing *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 111-13 (3d Cir. 2015) (Ambro, J., concurring)).

Defendant made no attempt in the Reply to address that decision or to distinguish that case.

Plaintiff further explained that the Supreme Court's "nerve center" test, *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) established to determine the citizenship of a corporation, applies particularly well in this case as both Defendants POLITICO and Protocol, along with their sole member the Allbritton company and various other related entities, are all co-located at Suite 2700, 1000 Wilson Blvd., Arlington, Virginia. Plaintiff cited Judge Tatel's extensive discussion of *Hertz* in *CostComand* and included this notable paragraph:

> [i]n *Hertz*, the Supreme Court gave clear guidance for determining the location of a corporation's principal place of business. The Court described its approach as follows:
>
>> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its

board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Cost Command LLC v WH Administrators*, 820 F.3d 19, 23 (D.C. Cir. 2016) (quoting *Hertz*, 559 U.S. at 92-93).

At no point in the Reply does the Defendant address this argument or attempt to rebut it. In the Reply, Defendant failed to provide the Court any reason that the *Hertz* "nerve center" test should not apply in this case.

It is a well-established rule that when a party fails to rebut an argument made by an opposing party it may be treated as conceded. Although many of these cases concern circumstances when the plaintiff fails to respond to an argument made by the defendant, *see, e.g., Kaul v. Fed'n of State Med. Bds.,* 2021 U.S. Dist. LEXIS 62007 (D.D.C. 2021) in the *Day* decision cited above, the Court used the generic term "party" and followed *Lewis v. United States,* 1990 U.S. Dist. LEXIS 14768 (D.D.C. 1990). In *Lewis*, the Court denied a motion to dismiss after it determined that the defendant failed to respond to plaintiff's arguments in its reply memorandum.  As Judge Penn explained, "[t]he Court will treat plaintiffs' arguments in opposition as conceded and deny defendant's motion to dismiss, without prejudice to defendant renewing the motion at a later date." *Id*. at 5. Judge Walton reached a similar conclusion in *Headfirst Baseball LLC v. Elwood,* 206 F. Supp. 3d 148 (D.D.C. 2016) concerning the failure of the defendant to address arguments made by the plaintiff: "In his reply brief, defendant Robert Elwood does not address this significant factual argument made by the plaintiffs in their opposition. Accordingly, the Court can consider this argument conceded by defendant Robert Elwood." *Id.* at 156 n.4 (citing *Day v. D.C. Dep't of Consumer and Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.")).

This Court's Minute Order of April 29, 2021 also reflected the commonsense distinction between the "citizenship" of a natural person and the "principal place of business" of a company. To establish jurisdiction, the Court instructed the Plaintiff to provide "the states where the individual defendants are citizens." Regarding POLITICO and The Protocol, the Court instructed Plaintiff to provide the "the principal place of business," along with where Protocol "is incorporated." In the Amended Complaint, Plaintiff chose to dismiss claims against Mr. Allbritton and Mr. Grieve as there was reason to believe that they were in fact D.C. residents and that Plaintiff's identical claims would go forward against Politico and Protocol. But as to Politico and PROTOCOL, Plaintiff determined that the "<u>sole member</u>" of both business entities is Allbritton LLC, "a limited liability company organized under the laws of Delaware with its principal place of business in Arlington, Virginia." (Dkt. 12 at 12-1 ¶1, 12-2 ¶1.)] The individuals may reside in Washington, DC, but their companies operate in Arlington, Virginia.

## II.     The Court Should Grant Jurisdictional Discovery

In the Motion for Jurisdictional Discovery, Plaintiff provided clear authority that "[t]his Circuit's standard for permitting jurisdictional discovery is quite liberal . . . ." *Diamond Chem. Co. v. Atofina Chemicals, Inc*., 268 F. Supp. 2d 1, 15 (D.D.C. 2003). (Dkt. 13 at 11-12.) *Diamond Chemical* followed from this Circuit's opinion in *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) where Chief Judge Edwards wrote "This court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." 199 F.3d at 1351.

In opposition, Defendants cite to an opinion of then-District Judge Brown Jackson. *Capitalkeys v. Democratic Congo*, 2021 U.S. Dist. LEXIS 103996 (D.D.C. June 3, 2021)

Defendants are correct that Judge Brown Jackson denied the motion, but Defendants failed to provide the facts of the case and also did not discuss basis of the holding.

*Capitalkeys* was about a contract dispute that Judge Brown Jackson resolved on sovereign immunity grounds not federal diversity. As Judge Jackson wrote, "this Court agrees that the Central Bank has sovereign immunity, because neither of the identified statutory exceptions to foreign sovereign immunity applies with respect to CapitalKeys's claims against the Central Bank." *Id.* at 3. CapitalKeys sought discovery in an attempt to show that "the Governor of the Central Bank had both actual and apparent authority to sign the relevant contract." *Id.* at 57. But the Court found that "CapitalKeys has made no attempt to describe any specific information bearing on Governor Masangu's authority that it believes exists; instead, it apparently seeks any information that could possibly support its theory that Governor Masangu possessed authority to bind the Central Bank to the Retainer Agreement." *Id.* at 58. The Court further found that "jurisdictional discovery is seemingly unnecessary here, because any evidence that could possibly cure the factual deficiencies this Court has identified above would be in the possession of CapitalKeys, not the Central Bank." *Id.* at 58-59. (Citation omitted). And the Court determined that "CapitalKeys has not identified any potential evidence not already in its own possession that would justify jurisdictional discovery." *Id* at 62.

In summary: Judge Brown Jackson's ruling about jurisdictional discovery in *Capitalkeys* (1) concerned sovereign immunity under 28 U.S.C. §1603(a), 1604, and 1605(a)(1)- (2) (not federal diversity jurisdiction under 28 U.S.C. § 1332), (2) related to information that was likely in possession of the plaintiff (not the defendants), and (3) involved a plaintiff who failed to identify any potential evidence (such as the decision to create a new company during the precise period

that is central to this case) that would justify jurisdictional discovery. *Capitalkeys* is readily distinguishable.

In the Opposition, Defendants also cite to *Roz Trading Ltd. v. Zeromax Grp., Inc.*, 517 F. Supp. 2d 377 (D.D.C. 2007). In that case, the court denied the motion for jurisdictional discovery because the plaintiff's "alter ego claims" were unrelated to determining the principal place of business of the defendants. 517 F. Supp. 2d at 389. In this case, Plaintiff contends that discovery would help determine whether (1) the formation of Allbritton LLC during the precise period that is central to this case or (2) the addition of key members of Protocol to Allbritton LLC during the pendency of this litigation were intended to frustrate federal jurisdiction.

Regarding *Diamond Chemical,* Defendants respond that Plaintiff "must have at least a good faith belief" that such discovery will advance its jurisdictional arguments. 268 F. Supp. at 15. But Plaintiff's provided multiple good faith reasons, Dkt. 13-12 ("Plaintiff seeks jurisdictional discovery to determine whether the timing of the addition of these members and the incorporation of Allbritton LLC was intended to frustrate jurisdiction in this matter"), and the Court in *Dow Chemical* granted jurisdictional discovery even though "Plaintiff had made only a paltry showing." 268 F. Supp. at 16. *See also., Ofisi v. Al Shamal Islamic Bank*, 2019 U.S. Dist. LEXIS 44996 (D.D.C. 2019) ("The Court concludes that limited jurisdictional discovery is warranted.") (citing *Diamond Chemical*, 268 F. Supp. 2d at 15); *Wesberry v. United States*, 205 F. Supp. 3d 120, 136 (D.D.C. 2016) ("The Court finds that limited discovery is warranted in this case.") (citing *Diamond Chemical*, 268 F. Supp. 2d at 15), *Davis v. United States*, 196 F. Supp. 3d 106, 121 (D.D.C. 2016) ("The Court finds that limited discovery is warranted in this case.").

In Plaintiff's Cross Motion, Plaintiff pointed to the fact that the Allbritton company was newly formed on April 7, 2020, as evidence that Defendants sought to frustrate jurisdiction in this

matter. (Dkt. 13 at 12 ("Plaintiff has also learned that Allbritton LLC was newly formed on April 7, 2020, within days of when Protocol Executive Editor Tim Grieve fired almost half of the editorial staff of The Protocol.").) Remarkably, Defendants contend that this fact weighs in their favor, arguing in essence that the timing between the formation of Allbritton LLC and the events that gave rise to this lawsuit is too attenuated. But a brief examination of the timeline of the news story and the record of incorporation reveals that April 7, 2020 was almost the exact date Allbritton LLC would be formed if the intent was to evade federal jurisdiction. Ross, the source of the Protocol "story," was fired from EPIC on March 30, 2020, and received her last paycheck on April 15, 2020. The article appeared in the Protocol on April 16, 2020. Ross almost certainly contacted the journalist at the Protocol upon her termination and the Protocol likely conspired with Ross to both pursue the story and to hold off publication until April 16, 2020. Allbritton LLC was formed on April 7, 2020 (Dkt. 13 at 12 n.2), at almost the exact same time that the Protocol was considering publication of the defamatory article that is the basis of this lawsuit.

Of course, these points are conjecture based only on publicly available information and commonsense. It is not possible to determine, at this time, whether in fact Allbritton LLC was formed for the purpose of evading federal jurisdiction without the limited discovery that Plaintiff now seeks. But if that were the purpose, the Virginia company would have almost certainly been formed after The Protocol became aware of the story and prior to actual publication. And that is precisely the chronology in this case.

Finally, Defendants make the remarkable claim that the Court should deny jurisdictional discovery in this case to "weed out unmeritorious defamation suits," and then cites to *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 108 (D.C. Cir. 2017). *Kahl* had nothing to do with jurisdictional discovery. But *Kahl* has a lot do with this Circuit's standard for prevailing in a

defamation lawsuit. That case concerned the misattribution of statements at a sentencing hearing that appeared in the BNA Criminal Law Reporter. Not only was there no showing of malice (or fabrication of an entire article by the news organization), the Court found that "the BNA author and her supervisor both stated that they believed that the initial BNA report was true when it identified the sentencing judge as the author of those statements." 856 F.3d at 109. As the Court further explained, "it was therefore entirely reasonable for BNA to think it was the sentencing judge who was speaking throughout. And it certainly was far from actual malice for BNA to report that the sentencing judge made the statements in question." 856 F.3d at 117-18. The Court also noted that "the initial letter from Kahl's attorney did not correct the misimpression created by the excerpted transcript." Throughout the opinion, the Court emphasized that the BNA Criminal Law Reporter acted "reasonably," 856 F.3d. at 116, 117. *See Lohrenz v. Donnelly*, 350 F.3d 1272, 1284 (D.C. Cir. 2003) (publishers are expected to "act reasonably in dispelling" doubts about the accuracy of their publication that might arise during the publishing process).

In the matter before this Court, neither the author nor her supervisor (Tim Grieve, the Executive Editor of Protocol) have made any attempt to defend the malicious, false, and defamatory article that the Protocol published on April 16, 2020. Defendant Protocol hardly acted "reasonably," when they attempted to ambush the Plaintiff hours before publication. Still, Defendant Protocol went ahead with the publication even after Plaintiff twice made clear that the "story" was fabricated by a recently fired employee. The fact that only the Protocol and Politico reported this "news" item speaks volumes about the conduct of Defendants in this defamation lawsuit.

Plaintiff has filed with this Court a detailed Complaint that identifies more than a dozen false and misleading statements made by the Protocol in the April 16, 2020 article and the

subsequent amplification by Politico. (Dkt. 10 ¶ 94.) Plaintiff has also alleged that numerous statements were made with malice or with reckless disregard of the truth. (*E.g.*, *id.* ¶¶ 290-299, 304, 307, 310, 317.) Plaintiff has also cited respected contemporaneous accounts of the events at the Protocol around the time of publication: a newsroom in chaos, failures to inform staff about planned cuts, well-respected reporters suddenly fired, an editor worried that once again he would bring a publication to the edge of collapse but would always try to drive up readership. (*E.g.*, *id.* ¶¶ 30-36, 40-42, 59, .) None of these factors would excuse a defamatory publication that caused immediate and long-lasting harm to Plaintiff, his family, and the organization he spent 25 years building. But they would most certainly be relevant to this Court's analysis of Plaintiff's claims under *Kahl.* As then-Judge Kavanaugh wrote for this Circuit, "Defamation is the act of making false statements about someone and damaging his or her reputation." *Kahl*, 856 F.3d at 112 *(*citing *Beeton v. District of Columbia,* 779 A.2d 918, 923 (D.C. 2001)).

*Kahl* does indeed stand for the proposition that courts should "weed out unmeritorious defamation suits." And under the standard established by the D.C. Circuit in *Kahl*, the Plaintiff in this case most certainly has a meritorious defamation lawsuit.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss and grant Plaintiff's Cross Motion for Jurisdictional Discovery.

Dated: July 6, 2021

Respectfully submitted,

IFRAH PLLC

By: */s/ Jeff Ifrah*
A. Jeff Ifrah (D.C. Bar No. 456661)
E-mail: jeff@ifrahlaw.com
1717 Pennsylvania Ave., NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4140
Facsimile: (202) 524-4141

*Attorney for Plaintiff Marc Rotenberg*